**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**Jacqlyn Powell,**

           **Plaintiff,**               **Case No. 3:24-cv-01315**

 **v.**                           **Judge Crenshaw**
                                 **Magistrate Judge Holmes**

**Western Express Inc.,**

                                   **JURY DEMAND**

           **Defendant.**

_____/

## PLAINTIFF JACQLYN POWELL'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

Plaintiff, Jacqlyn Powell opposes Defendant Western Express Inc.'s Partial Motion to Dismiss. (Doc. 27, 28). Defendant seeks only to dismiss Plaintiff's claims under 18 U.S.C § 1591 and her common law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, failure to train and supervise, and assault and battery. (Doc. 27).

### FACTUAL BACKGROUND

Ms. Powell worked as a Truck Driver for Western Express Inc. ("Western Express" or "Defendant") from October 2023 until February 2024. (Am. Compl. ¶¶6-7). Around November 6, 2023, Ms. Powell and another male trainee began riding with Temer Lynch ("Mr. Lynch") in his truck to start their training program. (Am. Compl. ¶8). Almost immediately, Mr. Lynch began making sexual advances toward Ms. Powell (Am. Compl. ¶9). Although Ms. Powell rejected Mr. Lynch's sexual advances and asked him to stop, Mr. Lynch disregarded Ms. Powell's wishes and proceeded to touch her repeatedly. (Am. Compl. ¶¶10-12).

During their training, Mr. Lynch stopped in Texas, where he resides. (Am. Compl. ¶13). While there, Mr. Lynch wanted to take Ms. Powell and the male trainee to dinner. (Am. Compl.

1

¶15). However, when Mr. Lynch arrived to pick up the trainees, Ms. Powell noticed the male trainee was not in the car and was told he would be driving separately. (Am. Compl. ¶¶16-17). While in the car, Mr. Lynch put his hand on Ms. Powell's leg, and Ms. Powell told him to stop. (Am. Compl. ¶18). After dinner, Ms. Powell had no choice but to ride back to her hotel with Mr. Lynch. (Am. Compl. ¶19). Despite Ms. Powell repeatedly telling Mr. Lynch to stop touching and propositioning her, he insistently asked her to come up to her hotel room, which Ms. Powell rejected. (Am. Compl. ¶20).

Following the rejections, Mr. Lynch did not provide Ms. Powell with the same driving opportunities as the male trainee and did not sign her in to reflect the driving she did perform, affecting her pay. (Am. Compl. ¶¶21-22).

While stopped in Missouri, Ms. Powell told Mr. Lynch that she did not feel comfortable driving with him alone and would be getting off when the other trainee departed. (Am. Compl. ¶24). In response, Mr. Lynch attempted to force Ms. Powell out of the truck, leaving her stranded in Missouri. (Am. Compl. ¶¶24-25). Ms. Powell called the local police department to complain about Mr. Lynch's harassing and retaliatory behavior. (Am. Compl. ¶25). Ms. Powell could not initially call Western Express because Mr. Lynch refused to provide her with a phone number, but she was able to obtain it once the police arrived at the scene. (Am. Compl. ¶¶26-27). At that time, Ms. Powell contacted Western Express to inform them of the harassment and let them know she wanted to be removed from Mr. Lynch's truck. (Am. Compl. ¶28). Western Express denied Ms. Powell's request for a bus ticket back to Tennessee and informed Ms. Powell that Mr. Lynch would drive her back to Tennessee. (Am. Compl. ¶¶29-31). This resulted in the continued sexual harassment of Ms. Powell. (Am. Compl. ¶32).

2

Rather than take Ms. Powell back to Tennessee, as instructed, Mr. Lynch started driving towards Texas against her will and began making sexual advances again. (Am. Compl. ¶¶33-34). When Ms. Powell refused, Mr. Lynch threw all of Mr. Powell's food on the truck's floor. (Am. Compl. ¶¶35-36). Ms. Powell contacted Western Express numerous times to report the harassing and retaliatory behavior, but Western Express intentionally and recklessly took no action. (Am. Compl. ¶37). Finally, Ms. Powell contacted someone at Western Express, who placed her in a hotel. (Am. Compl. ¶39).

On November 10, 2023, Ms. Powell emailed a written complaint of sexual harassment against Mr. Lynch to Western Express's HR department. (Am. Compl. ¶45). Ms. Powell was told there would be an investigation but was never informed of any details. (Am. Compl. ¶¶46-47). Currently, Mr. Lynch is still employed by Western Express. (Am. Compl. ¶48).

After completing her training, Western Express failed to provide Ms. Powell with load routes, limiting her ability to earn an income. (Am. Compl. ¶50). Moreover, Western Express assigned her to routes where she often had to cross paths with Mr. Lynch. (Am. Compl. ¶51). On February 23, 2024, Ms. Powell was constructively discharged. (Am. Compl. ¶52).

As a result of the harassment and retaliation Ms. Powell endured at the hands of Western Express and its supervisors, including Mr. Lynch, Ms. Powell has experienced repeated crying spells and fear in continuing her career as a truck driver, affecting her ability to obtain comparable employment. (Am. Compl. ¶54).

The need for instituting a safe work environment for female trainees was foreseeable. (Am. Compl. ¶54). For example, in November 2022, the Federal Motor Carrier Safety Administration (FMCSA) released a report that found, in part, that female truck drivers are more likely to experience harassment from another truck driver at their company, or their trainers. One of the

3

suggestions in the study was for the development of training materials: "encouraging them to have a clear and zero-tolerance policy against harassment. Also, procedures are needed to ensure each complaint is taken seriously and that an investigation takes place when necessary. This is particularly important because several survey respondents mentioned that they did not think that it would make a difference if they reported a harassment incident or that nothing would happen after they reported it. Habtemichael, et al., *Crime Prevention for Truckers Study*, Nov. 2022, at 51, https://rosap.ntl.bts.gov/view/dot/64915. Id.

## STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Fed. R. Civ. P 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. To survive a Rule 12(b)(6) Motion to Dismiss, a claim's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which is rests." *Erikson v.* Pardus, 551 U.S. 89, 93 (2007).

The court must construe the claim in a light most favorable to the plaintiff, accept the factual allegations as true, and determine whether the plaintiff's factual allegations present plausible claims. *Twombly,* 550 U.S. at 570. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Central States Pension Fund v. Mahoning Nat'l Bank*, 112 F.3d 252, 255 (6th Cir. 1997). A court should assume the veracity of well-pled factual allegations and then determine whether they

4

plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. Additionally, the pleadings need to demonstrate "just enough factual information to create an expectation that discovery will uncover evidence supporting the claim." *Id.* at 1955.

**ARGUMENT**

**I.      The Tennessee Workers' Compensation Act Does Not Apply to Ms. Powell's Claims**

Ms. Powell's claims, which arise from the sexual harassment and assault she endured during her training by Mr. Lynch, survive Defendant's Motion to Dismiss because the Tennessee Workers' Compensation Act ("TWCA") and its exclusivity provision do not apply. Defendant ignored this precedent regarding the inapplicability of the TWCA in sexual harassment claims and by extension the correlating intentional tort and negligence claims and, in doing so, misapplied the TWCA in urging dismissal of Ms. Powell's common law claims on this basis. (MTD Memo., ECF 28, pp. 2-7).

The employer bears the burden that the affirmative defense under the TWCA applies. *See Cloyd v. Hartco Flooring Company*, 274, S.W.3d 638, 647 (Tenn. 2008); *Lunsford v. A.C. Lawrence Leather Co.*, 189 Tenn. 293, 225 S.W.2d 66,59 (Tenn. 1949)). ("[T]he employer has the burden of proof to establish facts which the employer claims as a bar to the [worker's] compensation claim). Western Express has not met this burden in its motion to dismiss.

In *Anderson v. Save-A-Lot, Ltd.*, 989 S.W.2d 277, 288 (1999), the Tennessee Supreme Court expressly rejected the argument that sexual harassment claims, *and related injuries* were included under the TWCA because sexual harassment does not arise out of employment. In doing so, the court stated: "We question whether the drafters ever contemplated that the statute would

5

cover *injuries suffered as a result of sexual harassment*." *Id*. (emphasis added). Additionally, the court concluded that the alleged harassment "was an unanticipated risk that was not a condition of [the plaintiff's] employment" and could not be considered a "normal component of [the plaintiff's] employment relationship." *Id.*  This general rule has been used by courts that have refused to apply the TWCA exclusive remedy provision to common law claims in the context of a harassment claim. *See Rositano v. Freightwise, LLC*, 2021 U.S. Dist. LEXIS 595 *9-11 (M.D. Tenn. 2021) (Crenshaw, J.); (denying motion to dismiss claims for alleged sexual battery, false imprisonment, and negligent and intentional infliction of emotional distress as barred by TWCA); *Doe v. Matthew 25, Inc.*, 322 F. Supp. 3d 843, 853 (M.D. Tenn. 2018) (Trauger, J.) (denying motion to dismiss common law claims arising out of sexual harassment as not covered by TWCA); *Sims v. Meridian Senior Living*, LLC, 2012 U.S. Dist. LEXIS 174566 *12-13 (W.D. Tenn. Dec. 10, 2012) (denying motion to dismiss negligent infliction of emotional distress claims against employer); *Vanover v. White*, 2008 U.S. Dist. LEXIS 52980 *48 (E.D.Tenn. July 10, 2008) (denying motion for summary judgment to dismiss common law claims for sexual assault and outrageous conduct claims against employer under TWCA exclusivity provision); *Medrano v. MCDR*, 366 F. Supp. 2d 625, 632 (W.D. Tenn. 2005) (denying motion to dismiss common law claims for intentional infliction of emotional distress claims against employer under TWCA exclusivity provision); *Clayton v. Dollar General Corp*., No. 00-cv-2674-BBD *5-7 (W.D. Tenn. April 30, 2001) (denying motion for judgment on the pleadings common law claims for negligent hiring against employer under TWCA exclusivity provision). Thus, claims premised on sexual harassment and their correlating common law claims fall outside the scope of the TWCA.

Ms. Powell's claims do not fit the framework of a worker's compensation claim. "To qualify as a compensable workers' compensation claim, the injury must both 'arise out of' and

6

occur 'in the course of' employment." *Coleman v. St. Thomas Hosp*. 334 S.W.3d 199, 203 (Tenn. Ct. App. 2010). In *Anderson,* the court stated:

> The phrase, 'in the course of,' employment refers to time and place, and 'arising out of,' to cause or origin, and an injury by accident to an employee is 'in the course of" employment if it occurred while he was performing a duty he was employed to do; and it is an injury 'arising out of' employment if caused by a hazard incident to such employment.

*Id*., 989 S.W.2d at 279-80 (quoting *Travelers Insurance Company v. Googe*, 217 Tenn. 272, 397 S.W.2d 368, 371 (Tenn. 1965)). Subsequently, the Supreme Court identified three types of assaults in determining whether an injury arises out of employment:

> [I]ssues of whether assaults upon employees arise out of the scope of employment can best be divided into three general classifications: (1) assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

*Woods v. Harry B. Woods Plumbing Co., Inc*., 967 S.W.2d 768, 771 (Tenn. 1998). The court in *Woods* explained that assaults in the second category, stemming from "inherently private" disputes imported into the employment setting, are not compensable. *Id*.

This court has recognized that "[w]orkers' compensation does not reach every injury merely because it occurred in the workplace or involved coworkers." *Doe v. Matthew 25, Inc.*, 322 F. Supp. 3d 843, 852 (M.D. Tenn. 2018) (Trauger, A.) (quoting *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 511 (Tenn. 2010)). Likewise, in determining the inapplicability of the TWCA to a workplace sexual harassment and the corresponding tort claims, Judge Trauger recognized "[t]o hold otherwise [dismiss the tort claims] would be to consign such injuries to a no man's land between workers' compensation and tort—ineligible for workers' compensation but unprotected

7

by the common law. Nothing in Tennessee's case law or the language of the state's workers' compensation statutes supports such a rule." *Doe v. Matthew 25, Inc*., 322 F. Supp. 3d at 853.

This Court has specifically taken note that "Tennessee courts have carved out a narrow exception for sexual harassment as a matter of public policy, so that sexual harassment claims are not covered by the TWCA. *Southall v. USF Holland, Inc.*, 2018 U.S. Dist. LEXIS 206220, *36 (M.D. Tenn. Dec. 5, 2018)(Richardson, J.) (citing *Davis v. Northpoint Senior Servs.*, No. 3:14-CV-106-PLR-HBG, 2016 WL 6078337 at * 7 (E.D. Tenn. March 22, 2016)).

The Tennessee Court of Appeals analyzed the exclusivity provision of the TWCA in ultimately rejecting the argument a sexual assault that occurred on the job fell under the TWCA. *Doe v. P.F. Chang's China Bistro*, 2017 Tenn. App. LEXIS 584 *12 (Tenn. Ct. App. Apr. 25, 2017). In doing so, the court of appeals stated:

> When an injury is "purely coincidental, contemporaneous, or collateral with the employment[, it] will not be considered arising out of the employment." *Coleman*, 334 S.W.3d at 204 (citing *Foreman v. Automatic Sys. Inc*., 272 S.W.3d 560, 572 (Tenn. 2008); *Anderson v. Westfield Grp*., 259 S.W.3d 690, 696 (Tenn. 2008); *Wait v. Travelers Indem. Co. of Illinois*, 240 S.W.3d 220, 228 (Tenn. 2007)).

> *Id*.

Defendant ignores this precedent and instead assumes Ms. Powell's injuries occurred during the course and scope of her employment and argues that Ms. Powell's claims do not fall within "actual intent" exception to the TWCA exclusivity provision. (MTD Memo., ECF 28, pp. 2-7). Notably, none of the cases relied on by Defendant involve assault and battery related to sexual harassment. See *Gray v. McDonalds Corp.*, 2011 U.S. Dist. LEXIS 172189 at *4-6 (W.D. Tenn. March 14, 2011)(a supervisor refused to give an employee their promised free meal in exchange for working late, resulting in a physical altercation); *Valencia v. Freeland & Lemm Constr. Co.*, 108 S.W.3d 239, 240-41 (Tenn. 2003) (an employee was killed when his construction trench

collapsed); *Williams v. Smith*, 222 Tenn 284, 285-86 (Tenn. 1968) (following her termination, the employee was then assaulted by the store manager); *Blair v. Allied Maintenance Corp.*, 756 S. W. 3d. 267, 268-69 (Tenn. Ct. App. 1988) (the supervisor shook grabbed the plaintiffs arm and neck and shook him and made threatening remarks); *Bellomy v. Autozone, Inc.*, 2009 Tenn. App. LEXIS 792 at *2-3 (Tenn. Ct. App. 2009) (plaintiff exclusively alleged Intentional Infliction of Emotional Distress related to her claim of sex discrimination and the defendant's failure to promote); *Romines v. Hascall Steel Co.*, 2007 U.S. LEXIS 107395 at *5-12 (M.D. Tenn. May 3, 2007) (Defendant employees used a switch on the plaintiff, smacked him on the back of the head, "bear" hugged him and threw him to the ground, and was cussed out during the work day).[1]

Further, Defendant relies on *Payton v. Stanfill, Inc.*,[2] regarding its assertion that claims of harassment and retaliation in violation of the THRA and Title VII "does not in and of itself cure Plaintiff's deficient pleading and does not serve to demonstrate "actual intent." (MTD Memo., ECF 21, p. 4). However, the court's only application of the TWCA exclusivity provision in *Payton* was related to the plaintiff's claim of Negligent Infliction of Emotional Distress. *Payton*, at *41-42. In fact, Defendant asserts that "even where court's permit claims of harassment or retaliation to proceed under state and federal statutes, courts will not permit [such tort] claims to proceed in most employment discrimination cases," but this mischaracterizes the court's opinion which was instead opining the applicability of Intentional Infliction of Emotional Distress to the employment setting, and not related to the TWCA exclusivity provision at all. *Payton* at *42. "Actual intent" is only applicable if the claim itself falls under the TWCA and there is an intentional tort. Here that is not the case.

---

[1] *Blair*, *Bellomy*, and *Romines* were matters ruled on at summary judgment. *Blair*, 756 S. W. 3d. 267 at 268-69; *Bellomy*, 2009 Tenn. App. LEXIS 792 at *2-3; *Romines,* 2007 U.S. LEXIS 107395 at *5-12.
[2] Notably, this issue was ruled on at summary judgment. *Payton* at *2.

9

Based on the Court's precedent, Defendant's motion must be denied. The precedent outlined above makes it clear that Ms. Powell's common law claims are not covered by the TWCA. In the instant case, we do not have discovery showing that Ms. Powell's claims assault "arose from" and occurred "in the course of her employment" with Western Express. Sexual assault by a supervisor should not be an inherent risk of the truck driving profession. There is no evidence that while Ms. Powell was training to become a truck driver, she was expected to endure unwanted sexual advances from her trainer as a term and condition of her employment. (Am. Complt ¶¶ 7-8).

Ms. Powell was repeatedly sexually harassed and assaulted by her supervisor. (Am. Compl. ¶¶ 8-27). After contacting Western Express and reporting Mr. Lynch's continued sexual assaults and harassment, Ms. Powell requested that Western Express provide her with a bus ticket home. (Am. Compl. ¶¶26-32). Western Express refused and instead required that Ms. Powell return to Tennessee with Mr. Lynch in his truck. (Am. Compl. ¶¶29-32). This intentional act of Western Express, forcing Ms. Powell into a truck with her sexual assaulter and harasser led to continued assault and harassment, including Mr. Lynch attempting to take Ms. Powell to another state. (Am. Compl. ¶¶ 32-39). Ms. Powell continued to notify Western Express, who continued to intentionally take no action. (Am. Compl. ¶¶ 33-37). Although these events occurred while Ms. Powell was being trained and on the truck with her supervisor, as discussed *supra* this does not automatically mean these actions were in the course and scope of Ms. Powell's employment and therefore not subject to the TWCA. Some of these actions occurred in the evening while Ms. Powell was trying to eat. (Am. Compl. ¶¶ 15-20). Thus, Defendant's Motion to Dismiss should be denied on this ground. Alternatively, as recognized by Western Express in footnote 2 of its Memorandum, to the extent Court finds this area of the law unsettled, Ms. Powell requests that this Court certify to the

10

Tennessee Supreme Court the question as to whether common law claims in a sexual harassment case are barred by the TWCA. (Doc. 28 p. 4 n. 3).

**II.     If it is determined the TWCA applies to Ms. Powell's claims, Ms. Powell's Intentional Tort claims should not be dismissed as Western Express acted with "actual intent."**

Even if the court finds that Ms. Powell's common law claims are compensable under the TWCA, the TWCA does not apply to Ms. Powell's claims of intentional infliction of emotional distress or assault and battery due to intentional tort exception to the exclusivity provision. Tennessee courts have created an exception to the exclusivity provision for intentional torts committed by an employer against an employee. *Bellomy v. Autozone, Inc.*, 2009 Tenn. App. LEXIS 792, \*27. Employees may sue their employers when they can show that the employer intentionally injured the employee. *See McCall v. Nat'l Health Corp*, No. M2004-00261-COA-R3-CV, 2006 (Tenn. App. LEXIS 585, 2006 WL 2523970, at \*2 (Tenn. Ct. App. Aug 31, 2006). Those torts give rise to a common law tort action for damages. *Gray v. McDonald's Corp.*, 2011 U.S. Dist. LEXIS 172189, \*14. Additionally, the TWCA does not bar an employee's intentional tort claims against a supervisor. *Id.* at \*21.

As distinguished *supra*, none of the cases relied on by Defendant to absolve Western Express of "actual intent" involve assault and battery claims related to sexual harassment, and Defendant's reliance on *Payton v. Stanfill, Inc.,* is misplaced.

Here, Mr. Lynch's sexual harassment, assault, and forced confinement of Ms. Powell in the truck, and Western Express' direct and intentional acts in response to her complaints for harassment and assault, resulted in continued sexual harassment and assault, as well as significant emotional distress. Mr. Lynch repeatedly harassed Ms. Powell, and Western Express ignored her complaints and did not take adequate action to address them. (Am. Compl. ¶¶8-52). Despite Ms. Powell calling

Western Express to make clear complaints and requests to be removed from the situation, Western Express knowingly instructed and forced her to continue her journey with her assaulter, Mr. Lynch. (Am. Compl. ¶¶ 28-29, 37-39). This led to Ms. Powell being transported against her will in the opposite direction, to Texas rather than Tennessee, and further sexually assaulted and harassed. (Am. Compl. ¶¶ 28-33). As discussed *supra*, the need for instituting a safe work environment for female trainees was foreseeable and intentionally ignored by Western Express.

Ms. Powell has plausibly plead that Western Express operated with "actual intent" causing harm to Ms. Powell related to her claims of assault, battery, and Intentional Infliction of Emotional Distress. Thus, Defendant's motion to dismiss should be denied on these grounds.

### III. Ms. Powell has Presented Plausible Facts to Support her Claim Under 18 U.S.C § 1591.

Ms. Powell's claim under the Trafficking Victims Protection Rehabilitation Act ("TVPA"), 18 U.S.C § 1595(a), survives Defendant's Motion to Dismiss because Ms. Powell has alleged sufficient facts in the Amended Complaint to support her claim. The TVPA provides for civil damages to those who solicit one to engage in a commercial sex act as defined by the statute. Specifically, it penalizes one who uses "force, threats of force, fraud, coercion . . . or any combination of such means" to cause the person to engage in a commercial sex act. 18 U.S.C § 1591(a)(2). An individual who is a victim of this crime may bring a civil action against the perpetrator, including whoever knowingly benefits financially or receives anything of value from participation in the venture, to recover damages and reasonable attorney's fees. 18 U.S.C § 1595(a) The law holds the trafficker and others who knowingly benefit from trafficking liable for damages.

Because Ms. Powell's job was ostensibly made contingent on her accepting the forced sexual advances, harassment, and assault by her trainer, to receive training and have her hours logged, she was therefore sex trafficked under 18 U.S.C. § 1591. The definition of sex trafficking

12

under 18 U.S.C. § 1591 requires an act "by force, fraud, or coercion" to prove sex trafficking. This statute has been used in the employment context. *See, e.g. Geiss v. Weinstein Co. Holdings, LLC*, 383 F. Supp. 3d 156, 167–68 (S.D.N.Y. 2019) (finding that actresses plausibly alleged that Weinstein enticed them to engage in commercial sex acts, in violation of § 1591, using promises of career advancement); *Canosa v. Ziff,* No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *23 (S.D.N.Y. Jan. 28, 2019) (finding that a young producer's allegations that Weinstein sexually abused and harassed her under the false pretense of conducting business meetings and promoting her career "comfortably falls within the scope of the TVPA"); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (finding that actress plausibly alleged that Weinstein violated § 1591 when he "employed both fraud and physical force to cause [her] to engage in a sex act with him," even though her claim "is not an archetypal sex trafficking action.").

This broad interpretation of the TVPA is appropriate. See *Geiss*, 383 F.Supp.3d at 168 ("the TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in consensual or, as alleged here, non-consensual sexual activity"); *Canosa*, 2019 WL 498865, at *23 ("[Defendants'] attempt to cabin the TVPA to reach only caricatures of child slavery, and to exclude corporate-supported conduct, is wholly unpersuasive. The text of the TVPA does not provide any charter for this self-serving distinction."); *Nobl*e, 335 F. Supp. 3d at 515 (S.D.N. Y. 2018) ("The remedial provision at issue, Section 1595, which permits actions for damages under Section 1591, requires broad interpretation."). *Ardolf v. Weber*, 332 F.R.D. 467, 473–74 (S.D.N.Y. 2019).

The TVPA covers enticement to engage in forced, coerced, or fraudulently induced commercial sex acts "even if the defendant has not 'trafficked' the plaintiff within the ordinary or traditional meaning of that word." *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 299 (S.D.N.Y.

2019). This includes enticement to participate in forced sexual activity with an employer or superior. *See, e.g.*, *Id.* at 300. Participation in a sex act can include being touched against one's will. *Martinez v. 189 Chrystie St. Partners, LP*, 2023 U.S. Dist. LEXIS 149510, at *11 (S.D.N.Y. Aug. 22, 2023).

Defendant claims Ms. Powell's TVPA claim should be dismissed because it is "nonsensical" and based on "threadbare" allegations. (Doc. 28, MTD Memo. p. 7-9). In doing so, it relies heavily on *Ramsbottom v. Ashton,* which is inapposite, as the plaintiffs were minor fans of Ashton who groomed, manipulated, and engaged in sexual relationships and sexually assaulted the plaintiffs while they were minor children. 2022 U.S. Dist. LEXIS 5152 at *4-11 (M.D. Tenn. Jan. 11, 2022) (Trauger, J.). Although the plaintiffs were given money on occasion by Ashton after these assaults, the plaintiffs were not employees of Ashton nor were they employees of the other associated business entities that were named defendants. *Id*. at *12-13. The plaintiffs alleged that Ashton used the business entities' resources to fund and support Ashton's illegal trafficking venture as well as using the companies' promotional events and who then benefitted. *Id*.

Here, Ms. Powell was a direct employee of Western Express whose training supervisor assaulted her and had control over her employment as to whether she received her training hours, from which Defendant would directly benefit once Ms. Powell was fully trained. (Am. Compl. ¶¶ 6-12, 18-23, 28-39, 49). In *Ramsbottom*, the named business entities did not and would not directly benefit from the sexual trafficking of the plaintiffs and instead merely participated in Ashton's music ventures, and no facts were alleged that suggested the business entity "knew or should have known" of Ashton's solicitation and trafficking of minors. *Ramsbottom*, 2022 U.S. Dist. LEXIS 5152, at *26-28. Here, once Ms. Powell was trained and allowed to drive trucks alone, it would directly provide profits and financial benefit to Defendant, as Defendant would have an additional

14

truck driver on the roads from which it would receive direct financial benefits. The *Ramsbottom* court notes that the plaintiffs did not make an argument that Ashton was an agent for the other business entity for which he was the founder and CEO or that this business entity ratified the actions of Ashton. 2022 U.S. Dist. LEXIS 5152, at *54-58.

Defendant attempts to narrow the broad interpretation *supra* by attempting to limit the definition of "participation in a venture" as requiring that a defendant commit an "overt act." (MTD Memo., ECF 21, p. 8) (citing *United Stated v. Afyare*, Fed. Appx. 272, 273-74 (6th Cir. 2016)). However, *Afyare* was a criminal matter and imposes a higher standard than the "knew or should have known" standard in *Ramsbottom*. 2022 U.S. Dist. LEXIS 5152, at *26. Defendant then relies on *Ratha v. Patthana Seafood Co., Ltd.*, that it is not sufficient for Defendant to have been in "receipt of a passive benefit;" however, in *Ratha*, the business entity defendant merely purchased seafood from defendant, Patthana Seafood, and jointly marketed the product. 2017 U.S. Dist. LEXIS 230294, at *11 (C.D. Cal. Dec. 21, 2017). Here, Defendant stood to directly benefit from the abuse of power and sexual harassment and assault exercised by one of its training supervisors against an employee, which Ms. Powell alleged correlated to her receiving the training. (Am. Compl. ¶¶ 21-23, 49). Defendant again mischaracterizes the required standard for "knowing" by relying on a criminal case related to identity theft. (MTD Memo., ECF 28, p. 8-9); *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009). Although Defendant alleges that Ms. Powell purports no causal link between then sex act and benefit received by Defendant, this is wholly incorrect. (MTD Memo., ECF 28, p. 9). Ms. Powell pled that she believed her training and therefore advancement was conditioned on accepting the sexual harassment and assault by her training supervisor. (Am. Compl. ¶¶ 21-23, 49).

15

In this case, Ms. Powell sufficiently pled that Defendant violated both §§ 1591 and 1595 by facilitating, enabling, and failing to prevent sexual harassment, exploitation, and retaliation against Ms. Powell by her supervisor, Mr. Lynch. The Amended Complaint demonstrates that Mr. Lynch repeatedly made sexual advances toward Ms. Powell. (Am. Compl. ¶¶ 6-12, 18-23, 28-39, 49). Mr. Lynch escalated the coercion, attempting to take Ms. Powell to Texas against her will. (Am. Compl. ¶¶ 33-41). Thus, Defendant, via supervisor Mr. Lynch, solicited Ms. Powell for sex in exchange for her to continue to receive training and logging her hours. (Am. Compl. ¶6-12, 18-23, 28-39, 49). Further, despite Ms. Powell reporting Mr. Lynch to Western Express and requesting a bus ticket so she could remove herself form the assault and harassment, Western Express refused and expressly directed her to remain on the truck with Mr. Lynch, allowing him to continually harass and assault her. (Am. Compl. ¶ 28-32). Based on these facts, Ms. Powell sufficiently pled that Defendant financially benefits from doing business in this manner by putting its trainees in unsafe situations despite the serious implications. Accordingly, Ms. Powell's TVPA claims should survive.

**CONCLUSION**

In conclusion, Counts V, VI, VII, VIII, and IX of Ms. Powell's well-pleaded complaint should not be dismissed because Ms. Powell has alleged a clear, concise, and specific set of facts for which she is entitled to relief.

Respectfully submitted,

*/s/ Ashley Shoemaker Walter*
Heather Moore Collins (# 026099)
Ashley Shoemaker Walter (#037651)
Lucia Izzolo (042496)
HMC Civil Rights Law, PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027

16

615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com
lucia@hmccivilrights.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, a copy of the foregoing document was served via the Court's electronic filing system to counsel of record:

Mary Leigh Pirtle
Hunter K. Yoches
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
Telephone: (615) 742-6200
Facsimile: (615) 742-6293
mpirtle@bassberry.com
hunter.yoches@bassberry.com
*Counsel for Defendant*

*/s/ Ashley Shoemaker Walter*
Ashley Shoemaker Walter

17