| | | |
|---|---|---|
| **JACQLYN POWELL,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-01315** |
| | ) | |
| **WESTERN EXPRESS, INC.** | ) | **CRENSHAW/HOLMES** |
| | ) | |
| **DEFENDANT.** | ) | |

**REPLY IN SUPPORT OF DEFENDANT WESTERN EXPRESS'S PARTIAL MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**A. Negligence-based Common Law Claims are Barred by the Exclusive Remedy
Provision of the Tennessee Workers' Compensation Act.**

As set forth in Western's Motion, Tennessee courts have routinely held that claims for

negligent infliction of emotional distress and negligent training and supervision are precluded by

the exclusive remedy provision of the Tennessee Workers Compensation Act ("TWCA") (Doc.

No. 28 at 3-4). Ignoring this precedent, Plaintiff has latched onto a 1999 decision of first

impression by the Tennessee Supreme Court – *Anderson v. Save-A-Lot, Ltd.*, 989 S.W.2d 277

(Tenn. 1999). Importantly, *Anderson* did not hold what Plaintiff (and admittedly some federal

courts) have extended this ruling to hold.

In *Anderson*, the plaintiff brought a claim under the TWCA seeking recovery for medical

expenses and lost earnings for her sexual harassment occurring in the workplace. *Id*. at 278. The

Tennessee Supreme Court held that such claims were not compensable under the TWCA, but

rather that the plaintiff should have properly filed her claim of sexual harassment under Title VII,

because that act was enacted to provide a remedy for the type of injuries she alleged. *Id*. at 289.

The Tennessee Supreme Court *did not* hold that the TWCA exclusivity provision excluded

<u>*common law claims related to sexual harassment*</u> (as such a ruling would have been a significant departure for longstanding Tennessee case law). Put simply, *Anderson* permitted Plaintiff, as she has done here, to file a claim for sexual harassment under Title VII. But, *Anderson* did not permit Plaintiff to ignore the TWCA's exclusivity provision and to file common law claims related to such alleged sexual harassment.

*Anderson* is the extent of the Tennessee Supreme Court's ruling on such matters. Whether or not common law claims related to sexual harassment claims are barred by the exclusive remedy provision of the TWCA in conjunction with the public policy of the State of Tennessee is a decision reserved for the Tennessee Supreme Court. Federal courts should not extend such public policy exceptions without the explicit holdings of the Tennessee Supreme Court (or even the Tennessee General Assembly). *See Nettles v. Hotel Peabody, G.P.*, 2010 WL 5093362 (W.D. Tenn. Dec. 8, 2010) (declining to extend such exceptions absent rulings by Tennessee courts). Accordingly, Western avers that unless and until the Tennessee Supreme Court explicitly holds otherwise, common law claims alleging injuries arising out of sexual harassment claims in the workplace are barred by the exclusive remedy provision.

**B. Intentional Common Law Claims are Barred by the Exclusive Remedy Provision of the Tennessee Workers' Compensation Act.**

Plaintiff's Response effectively fails to dispute that her IIED and Assault and Battery claims against Western are likewise barred by the TWCA's exclusive remedy provision. This alone provides the basis to dismiss her claims. Even still, Plaintiff fails to persuasively show that her Amended Complaint contains any alleged facts sufficient to show that Western had an actual intent to harm her. Indeed, while she claims that Western "forced her to continue her journey" with Mr. Lynch, Plaintiff alleges that Western provided Plaintiff with a hotel room and transportation home

2

with a different trainer, such that she could complete her training absent Mr. Lynch. (Doc. No. 22 at ¶¶ 39, 44). These pleaded "facts" do not show actual intent.

Tennessee courts are clear that a co-employee's—even a supervisory co-employee's—intentional tort will not give rise to a cause of action against the employer, *Williams v. Smith*, 435 S.W.2d 808, 811 (Tenn. 1968), unless the employer actually intended to injure the employee. *Blair v. Allied Maintenance Corp.*, 756 S.W.2d 267, 270 (Tenn. Ct. App. 1988). Likewise, the Tennessee Supreme Court has long held that suits against an employer based upon intentional assaults of a co-employee, even in a supervisory position, are barred "[u]nless the employer has *commanded or expressly authorized* the assault." *Romines v. Hascall Steel Co.*, 2007 WL 9783241, at *6 (M.D. Tenn. May 3, 2007) (quoting *Williams*, 435 S.W.2d at 810) (emphasis in original). Simply put, "[t]he Tennessee Supreme Court has held that the exclusive remedy provision of the TWCA bars a common law tort action against the employer where an employee supervisor intentionally commits an assault and battery upon a fellow employee." *Gray v. McDonald's Corp.*, 2011 WL 13116678, at *6 (W.D. Tenn. Mar. 14, 2011). Plaintiff does not allege any facts that Western commanded or expressly authorized an assault on Plaintiff.

### C. Plaintiff Cannot Sustain a Claim of Sex Trafficking.

Plaintiff cannot and does not dispute the purpose of the TVPA – "[t]o combat trafficking in persons, especially into the sex trade, slavery, and involuntary servitude, to reauthorize certain Federal programs to prevent violence against women, and for other purposes." *Ramsbottom v. Ashton*, 2022 WL 106733, at *8 (M.D. Tenn. Jan. 11, 2022) (Trauger, J.). Instead, Plaintiff relies upon the language of the 2008 Amendment, albeit incorrectly, as the basis for her claim. As this Court previously stated regarding the Amendment: "Congress provided the victims of sex trafficking a civil cause of action, not only against perpetrators, but also against those who

3

benefitted—financially or otherwise—from the sex trafficking of the victims. Section 1595 opened the door for liability against facilitators who did not directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture." *Id*. at \*9 (internal quotations omitted). Plaintiff's misconstruction of the Amendment fails to save her claim.

First, Plaintiff's reliance upon *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) is misplaced. In *Geiss*, the court noted that "[u]nlike direct perpetrators of sex trafficking, aiders and abettors of sex trafficking are liable under the TVPA only if they knowingly '*benefit*[ ], financially or by receiving anything of value, from participation in a venture which has engaged in' sex trafficking." *Geiss*, 383 F. Supp. 3d at 169. The *Geiss* court dismissed the TVPA claim against TWC because the controlling question was whether TWC was provided benefits from Weinstein *because of* TWC's facilitation of his sexual misconduct." *Id*. at 169-70. Plaintiff likewise does not allege that Mr. Lynch secured Western's complicity in his alleged sexual violence as a condition of his employment, and does not allege that any directors or officers were compensated for any participation in Mr. Lynch's alleged assaults. These failures require dismissal of Plaintiff's claim. *See id*. at 170.[1]

Second, setting aside whether Plaintiff's alleged sexual harassment amounts to a "sex act," which Western denies, there is no indication that such acts were commercial. Plaintiff points to out of district case law in support of her allegation that the prospect of career advancement can render a sex act commercial in nature (which Western disputes is an appropriate analysis). Yet, her Amended Complaint is devoid of such allegations—Plaintiff does not allege that Mr. Lynch

---

[1] Conversely, in *Canosa*, another case involving Harvey Weinstein that Plaintiff relies upon, the plaintiffs alleged that TWC facilitated meetings involving Mr. Weinstein with knowledge that sexual assaults would occur. *Canosa*, 2019 WL 498865, at \*23-25. Plaintiff includes no such allegations against Western.

ever proposed any sort of *quid pro quo*, like sex for career advancement. Plaintiff instead admits she only advanced her career after she received a new trainer and completed her training. (Doc. No. 22 at ¶¶ 39, 44). In other words, Plaintiff did not have to have sex with Mr. Lynch to advance at Western. Such facts are fatal to Plaintiff's claim. *See Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021). Moreover, Plaintiff does not allege the use of force or coercion to engage in sex acts through the "threat of serious harm." *See id*. Instead, as this Court did in Dismissal of Plaintiff's TVPA claim is appropriate.

Further still, Section 1591(a)(2) would require Western to know that Mr. Lynch was causing Plaintiff to engage in a "sex act, on account of which anything of value is given or received by another person" and know (or should have known) that they benefitted from knowingly assisting, supporting, or facilitating Mr. Lynch's illegal activity. *See Doe v. William Bowers Mgmt., LLC*, 2024 WL 1293873, at **3-4 (M.D. Tenn. Mar. 26, 2024) (Campbell, J.) (dismissing TVPA claim). Based on Plaintiff's own allegations, at most Western became aware that Mr. Lynch allegedly acted inappropriately only after she reported the conduct. There are no allegations which could be fairly read to place Western on notice of a commercial sex act.

To expand the definition of commercial sex act as defined within the law to the acts alleged in the Amended Complaint would be an unintended and unnecessary expansion that contrary to the original meaning of the law, and contrary to the intent and purpose of the law. Plaintiff's baseless attempt at alleging she was sex trafficked – despite the Amended Complaint containing no facts to support this claim – demeans the meaning of this statute and is an insult to those who have suffered the horrendous tragedies and atrocities by true sex trafficking.[2] This Court has

---

[2] *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019), displays the type of case that the TVPA's Amendment was intended to cover and create liability against bad actors. That case involved claims against owners of hotels used for sex trafficking and included

consistently declining to extend the TVPA in such a manner. *Ramsbottom*, 2022 WL 106733, at

**9-11 (Trauger, J.); *Doe*, 2024 WL 1293873, at *4 (Campbell, J.).

Dated: March 25, 2025.

Respectfully submitted,

By: *s/Mary Leigh Pirtle*

Mary Leigh Pirtle (TN BPR# 026659)
Hunter K. Yoches (TN BPR# 036267)
BASS, BERRY & SIMS PLC
21 Platform Way South, Suite 3500
Nashville, TN 37203
Telephone: (615) 742-6200
Facsimile:  (615) 742-6293
mpirtle@bassberry.com
hunter.yoches@bassberry.com

*Counsel for Defendant*

---

specific allegations the Plaintiffs contended put the owner on notice of sex trafficking, including "an extraordinary number of used condoms," paying cash for rooms, requesting rooms near exits, and a significant number of men going into the same room each day. *Id*. at 962. That court concluded that the plaintiff's pleading included sufficient allegations, accepted as true, to state a claim that the hotel owners "should have known" sex trafficking took place in the hotel.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of March 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to:

Heather Moore Collins
Ashley Shoemaker Walter
Lucia Izzolo
HMC Civil Rights Law, PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
heather@hmccivilrights.com
ashley@hmccivilrights.com
lucia@hmccivilrights.com

*Counsel for Plaintiff*

*s/Mary Leigh Pirtle*
Mary Leigh Pirtle

46901989.3

7