**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JACQLYN POWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:24-cv-1315** |
| | ) | |
| **WESTERN EXPRESS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Jacqlyn Powell is suing her former employer, Western Express, Inc., asserting violations of Title VII, the Tennessee Human Rights Act, and the Trafficking Victims Protection Act ("TVPA"). (Doc. No. 1). She also asserts several common law violations, including assault, negligent and intentional infliction of emotional distress, and failure to train and supervise. Id. Western Express moves to dismiss Ms. Powell's tort claims, arguing that the Tennessee Workers' Compensation Act ("TWCA") bars those claims. (Doc. Nos. 27, 28). Western Express also moves to dismiss the TVPA claim, arguing the Complaint does not contain sufficient factual allegations to establish a sex trafficking venture, that Western Express benefited from participating in such a venture, or that a commercial sex act occurred or was intended to occur. (Id.). For the reasons that follow, Western Express's motion to dismiss will denied on the tort claims but granted as to the TVPA claim.

### I.      BACKGROUND

Ms. Powell worked as a truck driver at Western Express between October 2023 and February 2024. (Doc. No. 1 ¶¶ 6-7). As part of her training program, she was assigned to "ride along" with a more experienced drive named Temer Lynch. (Id. ¶ 8). Mr. Lynch allegedly sexually harassed Ms. Powell, including repeatedly touching her despite her objections. (Id. ¶¶ 9, 11, 18).

Ms. Powell rebuked these advances; afterwards, Mr. Lynch gave Ms. Powell fewer opportunities to train and refused to credit her for the time she did spend training. (Id. ¶¶ 21-22).

On one trip where she was allowed to train, Ms. Powell informed Mr. Lynch that she was uncomfortable being alone with him and that she would leave the truck when the other male trainee departed. (Id. ¶ 24). According to Ms. Powell, Mr. Lynch immediately forced her out of the truck and left her stranded in Missouri. (Id. ¶¶ 24-25). Ms. Powell called Western Express, complained about Mr. Lynch's behavior, and requested a bus ticket back to Tenneessee. (Id. ¶ 28). Western Express allegedly told Ms. Powell that she needed to ride with Mr. Lynch back to Tennessee. (Id. ¶ 29). When Mr. Lynch circled back to pick up Ms. Powell, he recommenced the sexual harassment. (Id. ¶¶ 31-32). He also began driving in the direction of his home in Texas rather than back to Tennessee, which frightened Ms. Powell. (Id.). Ms. Lynch called Western Express again to report her ongoing concerns about Mr. Lynch's behavior. The company ultimately agreed to pay for a hotel and to find her an alternative means of transportation back to Tennessee. (Id. ¶ 37).

After this incident, Ms. Lynch was reassigned to another trainer and ultimately completed her training program. (Id. ¶ 42). On November 10, 2023, Ms. Powell filed a written sexual harassment complaint against Mr. Lynch with Western Express's human resources department. (Id. ¶ 43). Between November 10, 2023 and February 23, 2024, Western Express stopped giving Ms. Powell the same number of routes that were given to her male co-workers. (Id. ¶ 48, 50). Given the limitations on her earning potential, Ms. Powell left Western Express in search of other employment opportunities. (Id. ¶ 43). She asserts she was constructively discharged. (Id. ¶ 50). Mr. Lynch is allegedly still employed by Western Express. (Id. ¶ 46).

## II.      LEGAL STANDARDS

When assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the Complaint's factual allegations as true, draw all reasonable inferences in Plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). To survive a motion to dismiss, the complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." Eidson v. State of Tenn. Dept. of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Id.

## III.     ANALYSIS

### A.  Plaintiff's common law tort claims, which are rooted in sexual harassment, are not subject to the Tennessee Workers' Compensation Act.

Western Express moves to dismiss Ms. Powell's assault and battery, negligent and intentional infliction of emotion distress, and negligent training and supervision claims because the TWCA categorically bars these negligence-based and intentional torts. (Doc. No. 28 at 2-7). Ms. Powell responds, asserting that sexual harassment is not the type of workplace incident covered by workers' compensation. (Doc. No. 33 at 5-10). The question then is whether the TWCA covers an employee who suffers from unwanted sexual advances and physical touchings by a supervisor.

The TWCA is the exclusive remedy for claims by employees against their employer when the injury "arise[s] out of the work and occur[s] in the course of employment.'" Doe v. Matthew 25, Inc., 322 F. Supp. 3d 843, 852 (M.D. Tenn. 2018) (quoting Padilla v. Twin City Fire Ins. Co., 324 S.W.3d 507, 511 (Tenn. 2010)). "[A]n injury generally arises out of and is in the course of

3

employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of [her] employment." Coleman v. St. Thomas Hosp., 334 S.W.3d 199, 204 (Tenn. Ct. App. 2010) (collecting cases). While workers' compensation covers most workplace injuries, it "does not reach every injury merely because it took place in the workplace or involved coworkers." Rositano v. Freightwise, LLC, 2021 WL 1174589, at *3 (M.D. Tenn. Mar. 26, 2021).

Over two decades ago, the Supreme Court of Tennessee addressed whether tort claims based on sexual harassment fall within the TWCA's purview. Anderson v. Save-A-Lot, Ltd., 989 S.W.2d 277 (Tenn. 1999). The Tennessee Supreme Court held, generally, that injuries based on sexual harassment are not covered by workers' compensation because those injuries "d[o] not arise out of [the injured employee's] employment," but rather "result[] from conduct that [is] purely personal." Id. at 281. This general rule reflects Tennessee public policy that "sexual harassment [and associated claims] should not and cannot be recognized as a risk inherent in any work environment." Vanover v. White, 2008 WL 2713711, at *16 (E.D. Tenn. July 10, 2008) (quoting Harman v. Moore's Quality Snack Foods, Inc., 815 S.W.2d 519, 527 (Tenn. Ct. App. 1991)). While sexual harassment is unfortunately commonplace (and maybe even 'endemic'), Tennessee courts "have rejected the premise that it presents an 'inherent or necessary risk of employment' of the type contemplated by workers compensation law." Doe, 322 F. Supp. 3d at 852 (M.D. Tenn. 2018) (quoting Anderson, 989 S.W.2d at 288). In other words, unlike industrial accidents—like machines breaking or objects falling—workers "need not accept [sexual harassment] as a risk inherent in the workplace." Anderson, 989 S.W.2d at 289 (quoting Jane Byeff Korn, The Fungible Woman and Other Myths of Sexual Harassment, 67 Tul. L. Rev. 1363, 1385–86 (1993). Sexual harassment "can be eliminated" unlike other industrial risks. Id. Consequently, the Anderson

4

Court concluded that injuries arising from sexual harassment are "completely outside the contemplation of the workers' compensation scheme." Id. at 290.

It naturally follows that an injury "completely outside" the workers' compensation scheme is not "covered by the exclusive-remedy provision." Sims v. Meridian Sr. Living, LLC, 2012 WL 6115593, at *5 (W.D. Tenn. Dec. 10, 2012); see also Jones v. BWAY Corp., 2023 WL 3767086, at *2 (W.D. Tenn. June 1, 2023); Wheat v. Benton Cnty., Tennessee, 2009 WL 10699139, at *14 (W.D. Tenn. Aug. 27, 2009). Therefore, Ms. Powell's claims, which are grounded in sexual harassment, do not "arise out of" her work as a truck driver.

Because the TWCA does not apply here, Western Express's motion to dismiss Ms. Powell's tort claims based on the TWCA's exclusivity bar must be denied.

## B. Plaintiff has not pleaded a sex trafficking claim under 18 U.S.C. § 1595.

The TVPA confers criminal and civil liability upon anyone who "entices" a person knowing that "means of force, threats of force, fraud, [or] coercion" will be used to cause that person to "engage in a commercial sex act." Bridges v. Poe, 487 F. Supp. 3d 1250, 1260–62 (N.D. Ala. 2020) (quoting 18 U.S.C. §§ 1591(a), 1595). This is colloquially known as "perpetrator" liability. Ms. Powell does not allege that Western Express "enticed" her into engaging in commercial sex acts by means of force, fraud, or coercion. But she does assert that Mr. Lynch did so, and that Western Express benefited from Mr. Lynch's actions. (Doc. No. 33 at 12-15) ("Ms. Powell's job was ostensibly made contingent on her accepting the forced sexual advances, harassment, and assault by her trainer" and Ms. Powell would "provide profits and financial benefit to Western Express," once she was fully trained.). Therefore, she relies on the TVPA's "venture liability" provisions when asserting her sex trafficking claim against Western Express.

5

The TVPA establishes criminal venture liability for those who knowingly benefit from a sex trafficking operation:

> Whoever knowingly … benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of [§ 1591(a)(1)], knowing or … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act . . . .

18 U.S.C. § 1591(a)(2). The TVPA also establishes civil "venture liability" for anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter ...." § 1595(a). Notably, the TVPA's civil and criminal "venture liability" provisions are worded nearly identical—with the exception that § 1595(a) adds a constructive knowledge component. See Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 169, n.5 (S.D.N.Y. 2019). A common principle of statutory construction is that "identical words and phrases within the same statute should normally be given the same meaning." Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 232 (2007). This rule of construction dovetails with the principle that "if a law has both criminal and civil applications, the rule of lenity governs its interpretation in both settings." Whitman v. United States, 574 U.S. 1003 (2014); see also Leocal v. Ashcroft, 543 U.S. 1, 12, n.8 (2004).

6

Courts have struggled with how to apply § 1595(a),[1] and several have construed it broadly given its remedial purpose.[2]  This Court will construe identical terms used in §§ 1591(a)(2) and 1595(a) the same.  Therefore, to state a claim against Western Express based on venture liability, Ms. Powell must show that: (1) Western Express was part of a "venture," (2) Western Express knowingly benefitted from participation in the venture; and (3) Western Express knew or should have known that the venture would violate § 1591(a)(1).  See A.M. v. Wyndham Hotels & Resorts, Inc., 728 F. Supp. 3d 787, 797 (S.D. Ohio 2024).  Ms. Powell's TVPA claim falters on all three elements.

### i.      Venture

The Sixth Circuit, albeit in an unpublished opinion, has defined § 1591(a)'s use of the word "venture" as "two or more people who engage in sex trafficking together."  Afyare, 632 F. App'x at 285 (citing the definition of "venture" at § 1591(e)(5), which has since been moved to § 1591(e)(6)).  The Sixth Circuit rejected the argument that venture means "any" individuals who are associated in fact:

> [W]hen interpreting a statute, we 'consider not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme.' Therefore, while § 1591(e)(5) defines 'venture' as 'any group of two or more individuals associated in fact,' we also consider 'venture' in the context of § 1591(a)(2), which specifies 'a venture which has engaged in an act described in violation of paragraph (1),' i.e., sex trafficking. That is, its 'placement and purpose' in § 1591(a)(2) modify its 'bare meaning' in § 1591(e)(5).

---

[1] See A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 188 (E.D. Pa. 2020) (discussing disagreement amongst district courts on how to apply § 1595(a)); see also Doe v. JRD P'ship, 2025 WL 1097335, at *4 (M.D. Tenn. Apr. 10, 2025) ("[T]here has been no Sixth Circuit (or, for that matter, United States Supreme Court) case deciding" what is required to prove a beneficiary-liability-based claim under § 1595(a)).

[2] E.g., Noble v. Weinstein, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) ("The remedial provision at issue, Section 1595, which permits civil actions for damages under Section 1591, requires broad interpretation.").

Id. at 284–85.  In other words, an individual cannot be found guilty of venture liability under §

1591(a)(2) where he participates in a legitimate business venture and a partner in that legitimate

venture commits a sex trafficking act that incidentally benefits the legitimate business venture.  Id.

Some courts have noted that Afyare addresses the TVPA's criminal provision and has no

application to § 1595(a).  See A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 187 (E.D. Pa. 2020);

see also Doe by Doe v. Piraino, 688 F. Supp. 3d 635, 654 (M.D. Tenn. 2023).  The AB court

correctly states that § 1595(a) creates civil liability for anyone who "knowingly benefits from

participation in a venture it knew or *should have known* engaged in trafficking"; whereas §

1591(a)(2) requires actual knowledge that the venture engaged in sex trafficking.  See A.B., 455

F. Supp. 3d at 192 (emphasis added).  However, the A.B. Court then makes the unnecessary logical

leap that § 1595(a)'s "constructive knowledge" component renders Afyare's definition of

"venture" inapplicable in the civil context.  Id.  Not so.  Both § 1591(a)(2) (criminal liability) and

§ 1595(a) (civil liability) can be read to utilize the Sixth Circuit's definition of "venture" without

leading to absurd results.[3]

Section 1591(a)(2) can be proven by showing a person: (1) knowingly benefited; (2) from

participation in a group of "*two or more people [having] engage[d] in sex trafficking together*";

---

[3] The Court is aware of the Eleventh Circuit's decision in Doe #1 v. Red Roof Inns, Inc., 21 F.4th
714, 724 (11th Cir. 2021).  In that case, the Eleventh Circuit held that § 1591(e)(4)'s definition of
"participation" could not be imported into § 1595(a).  Id.  However, that decision did not address
§ 1591(e)(6)'s definition of "venture," which was the Sixth Circuit's focus in Afyare, 632 F. App'x
at 285.  Because this Court is focused on the Sixth Circuit's definition of "venture" as opposed to
§ 1591(e)(4)'s definition of "participation," it need not fully engage with the Eleventh Circuit's
DOE #1 decision.  However, the Court will note, in passing, that § 1591(e)(4)'s definition of
"participation," is not just problematic when imported into § 1595 (which it is).  Inserting the
statutory definition of "participation in a venture" into § 1591(a)(2) appears similarly problematic
because it renders subsequent text redundant.  Perhaps Congress was simply inartful when
formulating the new definition of "participation in a venture," which was added to the statute in
2018.  See Pub. L. 115–164, § 5, Apr. 11, 2018, 132 Stat. 1255 (adding § 1591(e)(4)'s definition of
"participation in a venture" and moving the definitions of "serious harm" and "venture").

8

(3) <u>knowing</u> that a sex act will occur by means of force, fraud or coercion. Meanwhile, § 1595(a) can be proven by showing a person: (1) knowingly benefited; (2) from participation in a group of "*two or more people [having] engage[d] in sex trafficking together*"; (3) <u>based on actual or constructive knowledge</u> that a sex act will occur by means of force, fraud or coercion. In other words, § 1595(a)'s constructive knowledge component only reduces a plaintiff's burden of showing what the defendant knew about the plan to sex traffic. Section 1595(a)'s statutory text— which uses "venture" the same way as § 1591(a)(2)—does not necessarily lessen a plaintiff's obligation of proving the existence of a venture. A defendant can unknowingly be a part of sex trafficking venture while also still being held to account for his constructive knowledge that two or more people with whom he associates were enticing victims into committing commercial sex acts by force, fraud, or coercion. Consider, for example, a large criminal enterprise that traffics in guns, drugs and humans and two or more members of that enterprise agree to engage in sex trafficking together. The boss of that larger criminal enterprise could be found civilly liable under § 1595 if the victim could prove that: (1) the boss knowingly benefited from the larger operation; (2) a sex trafficking venture existed; and (3) the boss knew or should have known that his participation in the larger criminal organization helped facilitate a violation of § 1591(a)(1). By contrast, consider a small law firm where one partner pressures an associate into having sex with him in exchange for larger bonuses. In that case, the associate could not sue the non-offending partners under § 1595 —even if they knew or should have known about the sex-for-bonuses scheme—because there was no venture (*i.e.*, two or more people did not agree to engage in sex trafficking together).[4] Although some may say this is not a desirous policy outcome, it is a result

_____

[4] Afyare's definition of "venture," which has support from 18 U.S.C. § 1591(e), is essentially a numerosity requirement. One lone perpetrator cannot be a venture. And a legitimate business venture cannot be converted into a sex trafficking venture simply because of the bad acts of a lone

9

that adheres to Afyare's definition of "venture" and applies that term consistently across two closely related statutes.

This reading also accounts for the grammatical structure of § 1595. There are two scienter requirements in § 1595. The first is that a person must "knowingly benefit." 18 U.S.C. § 1595(a). "Knowingly" modifies "benefit." The second is that a person must actually know or constructively know that the venture "engaged in an act in violation of this chapter." Id. "Knew or should have known" modifies the commission of a sex trafficking act. By contrast, nothing modifies "venture." Because § 1595 contains no scienter requirement for "venture," one is left to assume that plaintiffs must simply prove the existence of a venture, which the Sixth Circuit defines as "two or more people who engage in sex trafficking together." Afyare, 632 F. App'x at 285 (citing 18 U.S.C. § 1591(e)(6)).

Here, Ms. Powell has failed to plead the existence of a venture. Assuming the Complaint establishes any "sex trafficking" activities took place, it only claims that Mr. Lynch engaged in those activities. No one else agreed to engage in sex-trafficking. Mr. Lynch—acting alone and motivated by his personal sexual desires—is not a venture within the meaning of §§ 1591(a)(2) and 1595(a). Therefore, Ms. Powell's TVPA claim fails.

The Court knows this view is at odds with other courts that have held that a "venture" can be any association of people and that only one member of that association must engage in a sex trafficking act. E.g., G.G. v. Salesforce.com, Inc., 76 F.4th 544, 553 (7th Cir. 2023); Doe #1, 21 F.4th at 727; A.M., 425 F. Supp. 3d at 970. Those decisions, though, conflict with Afyare's definition of venture, see 632 F. App'x at 285, and the rules of construction that require: (1)

---

wolf. That being said, consider the law firm hypothetical above. If two or partners agreed to pay out larger bonuses to associates in exchange for sex, the victims could establish a sex trafficking venture.

identical statutory terms to be construed the same; and (2) identical words in a statute with criminal and civil applications to both be interpreted considering the rule of lenity. See Powerex Corp., 551 U.S. at 232; Whitman, 574 U.S. 1003. Watering down the elements of § 1595(a) to apply the statute more broadly may be good public policy, but it disregards important rules of statutory construction and appears inconsistent with the Congressional command that civil liability should only extend to "victim[s] of a violation of this chapter." 18 U.S.C. § 1595(a).

In sum, although several recent lower court decisions have construed § 1595(a) expansively—and beyond the statute's stated purpose of allowing the *victims of sex trafficking crimes* to obtain civil relief—this Court will take a more restrained approach that respects the words used by Congress and use the definition of "venture" set forth in Afyare, 632 F. App'x at 285. Because the Complaint does not establish the existence of a sex trafficking venture, as defined by Afyare, Ms. Powell's TVPA claim must be dismissed.

### ii. Benefit

Ms. Powell also argues that Western Express "benefited" from Mr. Lynch's sexual harassment because once she was trained, she could "drive trucks alone" and "directly provide profits" to Western Express. (Doc. No. 33 at 12-15) ("Ms. Powell's job was ostensibly made contingent on her accepting the forced sexual advances, harassment, and assault by her trainer" and Ms. Powell would "provide profits and financial benefit to Western Express," once she was fully trained.). The Court will set aside the thorny legal issue of whether a benefit must flow directly from the sex trafficking activity or whether the benefit can flow from any relationship with a sex trafficker, compare G.G., 76 F.4th at 564 and Geiss, 383 F. Supp. 3d at 168–70, because Ms. Powell's argument falters for a more fundamental reason. The alleged benefit to Western Express—*i.e.*, Ms. Powell learning how to do her job—flowed directly from Western Express'

employment contract with Ms. Powell. Western Express received the benefits of Ms. Powell's training *from* its salary payments to her for driving, not "*from* participation in a venture." 18 U.S.C. § 1595 (emphasis added).

In sum, Ms. Powell was supposed to train and drive trucks; Western Express received no additional benefits from its relationship with Mr. Lynch beyond Ms. Powell performing her required work duties and Mr. Lynch performing his. Therefore, her TVPA claim fails on the benefits element, as well.

### iii.     No § 1591(a)(1) violation took place or was intended to take place.

For a § 1591(a)(1) violation to occur, the perpetrator must use force, fraud or coercion to entice (or intend to entice) another person into committing a commercial sex act. Ms. Powell fails to allege that a "commercial" sex act occurred or was supposed to occur, which also dooms her venture liability claim against Western Express.

While the statute attempts to define what a "commercial sex act" is,[5] it does not explain what qualifies as a "sex act." The plain meaning of sex act can be found in the dictionary: (1) "a sex act is an act performed with another for sexual gratification," see Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/sexact; and (2) "a sex act is sexual relations, usually involve[ing] the touching of another's breast, vagina, penis, or anus," see Sex Act, Black's Law Dictionary (10th Ed.). Ms. Powell alleges that Mr. Lynch "repeatedly touch[ed] her," and that on one occasion he "put his hand on Ms. Powell's leg." (Doc. No. 1 ¶¶ 11, 18). However, touching someone's leg against their will—while certainly reprehensible—does not meet the definition of a sex act. Ms. Powell does allege, however, that Mr. Lynch "kept asking if

---

[5] A "commercial sex act" is any "sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

he could come up to her hotel room." (<u>Id.</u> ¶ 20). At this stage, granting Ms. Powell all reasonable inferences, the Court will infer that Mr. Lynch wanted to go to Ms. Powell's room to engage in "sex acts."

What is critically missing, however, is any allegation that Mr. Lynch enticed Ms. Powell to commit sex acts in exchange for anything of value, including promises of career advancement. Several courts have held that "the TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purposes of engaging them in consensual or ... non-consensual sexual activity." <u>Geiss</u>, 383 F. Supp. 3d at 168 (declining to dismiss TVPA claims against Harvey Weinstein where the complaint alleged that Weinstein promised plaintiffs career advancement and, during private meetings, sexually assaulted them); <u>see also</u> <u>Ardolf v. Weber</u>, 332 F.R.D. 467, 471-73 (S.D.N.Y. 2019) (declining to dismiss TVPA claims against a renowned photographer who enticed plaintiffs with the prospect of modeling career advancement and sexually molested them during photoshoots). The Court will assume, without deciding, that the TVPA's definition of "commercial" sex act extends as far as <u>Geiss</u> and <u>Ardolf</u> suggest it does. <u>See</u> 18 U.S.C. § 1591(e)(3) (defining "commercial sex act"). Therefore, for Mr. Lynch to have "commercialized" his desire to have sex with Ms. Powell, he would have needed to entice or coerce her into having sex based on promises of money, drugs, career advancement or anything else of value. However, Ms. Powell does not allege that Mr. Lynch did promise any of those things, especially to advance her career in exchange for sex. At worst, she claims Mr. Lynch retaliated against her for rebuffing his advances. (Doc. No. 1 ¶¶ 21-22). But Mr. Lynch's post hoc retaliation is not evidence that he attempted to entice Ms. Powell to have sex with promises of commercial advantage, including career advancement.

Accordingly, the requirement that a commercial sex act occur (or that the perpetrator intended for it to occur) has not been satisfied here, and Ms. Powell's TVPA claim must be dismissed.

## IV.    CONCLUSION

Western Express's argument that Ms. Powell's tort claims are barred by the TWCA is unavailing; however, its argument that Ms. Powell failed to plead a TVPA claim has merit. Accordingly, the Motion to Dismiss (Doc. No. 27) is **GRANTED IN PART AND DENIED IN PART.**  Ms. Powell's tort claims will proceed; her TVPA claim is **DISMISSED.**

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE